IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RODNEY HEARD, # N-62922,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-00905-NJR |
| | ) |
| **NATHAN CHAPMAN,** | ) |
| **DONALD GAETZ, VIPIN SHAH,** | ) |
| **D. HESS, GUY PIERCE,** | ) |
| **JOHN DOE 1, and JOHN DOE 2,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Rodney Heard, an inmate who is currently incarcerated at Pinckneyville Correctional Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 (Doc. 1). According to the complaint, Plaintiff's requests for dental care were consistently denied over the course of nearly two years, as salivary duct stones and a tumor developed in his mouth (Doc. 1, p. 5). Plaintiff ultimately lost most of his lower jaw bone and ten teeth to cancer (Doc. 1, p. 8). He now raises an Eighth Amendment deliberate indifference to medical needs claim against seven officials at two institutions, including Pinckneyville Correctional Center ("Pinckneyville") and Pontiac Correctional Center ("Pontiac"). Plaintiff seeks monetary damages.

**The Complaint**

According to the allegations in the complaint, Plaintiff was diagnosed with a painful salivary duct stone and recurring oral infection during his incarceration at Pontiac (Doc. 1, p. 5). On March 2, 2011, Pontiac's dentist, Defendant "John Doe 1," took x-rays of Plaintiff's mouth, prescribed antibiotics, and referred him to an oral surgeon (Doc. 1, p. 8).

The oral surgeon refused to perform surgery. He stated that the Illinois Department of Corrections ("IDOC") would not approve it, although the complaint alleges that the IDOC would. It is Pontiac's warden, Defendant Guy Pierce, who allegedly instituted a policy of denying this surgery.

Instead of a surgery referral, Plaintiff was sent to Pontiac's medical director, Defendant "John Doe 2," who diagnosed him with swollen and infected gums. Defendant Doe 2 also denied Plaintiff's request for surgery and a CT scan on June 2, 2011, based on the fact that Plaintiff would soon be transferred to another facility. In the meantime, Defendant Doe 2 treated Plaintiff with Motrin and antibiotics.

Plaintiff was not transferred to Pinckneyville until October 19, 2011 (Doc. 1, p. 5). The following day, he met with a dentist, Dr. Chapman. Although Dr. Chapman noted Plaintiff's diagnosis with salivary duct stones when reviewing his medical records, he failed to monitor or treat them. On October 26, 2011, Plaintiff submitted a request to see Dr. Chapman for a "painful salivary duct stone that [wa]s swollen" (Doc. 1, p. 5). The request was ignored.

From that point forward, Plaintiff suffered from swelling and pain on the right side of his mouth that flared up every two or three months. Eating caused so much pain on the right side of his mouth that Plaintiff used only his left side. During each episode, Plaintiff asked to see a dentist. Each time, his request was ignored.

In August 2012, Plaintiff met with one of Pinckneyville's grievance counselors, Defendant Hess. He requested a grievance form. Defendant Hess wanted to know why Plaintiff needed it. When Plaintiff explained that he had been waiting for almost a year to see a dentist, after submitting four separate requests, Defendant Hess explained that it generally takes a year to see a dentist (Doc. 1, p. 5). Plaintiff also blames Pinckneyville's warden, Defendant Donald

Gaetz, for denying inmates access to grievance forms and other means of obtaining medical care (Doc. 1, p. 9).

Plaintiff developed a swollen lymph node under his right jaw and a painful lump in his neck (Doc. 1, p. 5). On January 18, 2013, he met with one of Pinckneyville's medical doctors, Defendant Shah, to discuss it. Plaintiff asked Defendant Shah if an oral infection could cause the lumps. In response, Defendant Shah asked Plaintiff if he had seen a dentist. Plaintiff explained that he had been waiting to do so for quite some time. Defendant Shah prescribed antibiotics and ordered lab work, but failed to refer Plaintiff to a dentist (Doc. 1, p. 8).

On February 18, 2013, Plaintiff was finally called to the dentist's office to see Dr. Chapman. There, Plaintiff explained that he had submitted four requests for treatment of his ongoing salivary duct stone problems. Defendant Chapman claimed that he had never received the requests and was simply meeting with Plaintiff for a bi-annual check-up.

During the examination, Defendant Chapman discovered a cyst and four loose teeth in Plaintiff's mouth. X-rays taken on February 19th and 20th revealed that Plaintiff's teeth and jaw bone had been eaten away by an infection or cancer. Defendant Chapman referred Plaintiff to a facial and jaw specialist, Dr. Swanson.

When Dr. Swanson took x-rays of Plaintiff's mouth, he discovered a tumor in his jaw bone that was "so big that he feared doing a biopsy at his office" (Doc. 1, p. 8). Instead, Plaintiff was taken to a surgical center for the procedure on March 6, 2013. During the biopsy, Dr. Swanson removed four of Plaintiff's lower right teeth and some jaw bone. The biopsy confirmed the presence of a cancerous tumor.

Plaintiff underwent four surgeries. In the process, he lost "ten teeth, over half of [his] lower jaw bone, the bone that holds the tongue forward[1] . . . , [and the] nerve under [his] lower right jaw" (Doc. 1, p. 8). He endured two "very painful" bone grafts. A titanium plate and mesh now covers half of the jaw bone. Plaintiff suffers from external scarring, painful scar tissue, a numb lower lip, and a numb right cheek, all of which impede his speech.

Plaintiff now sues officials at both institutions for violating his Eighth Amendment right to receive adequate medical care. This includes the following Defendants at Pontiac: Pierce, Doe #1, and Doe #2. Also named as Defendants are the following Pinckneyville officials: Gaetz, Chapman, Shah, and Hess. Plaintiff seeks monetary damages.

**Merits Review Under 28 U.S.C. § 1915A**

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives preliminary review under this standard.

**Discussion**

**Count 1 – Eighth Amendment Dental Claim**

The complaint articulates a colorable Eighth Amendment claim (**Count 1**) for deliberate indifference to Plaintiff's dental needs against Defendants Chapman, Shah, Doe #1, Doe #2, Hess, and Pierce. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010).

---

[1] This was replaced with a screw.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim under the Eighth Amendment, a prisoner must show that the: (1) medical condition was objectively serious, and (2) state officials acted with deliberate indifference to the prisoner's health or safety, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

According to the Seventh Circuit, "dental care is one of the most important medical needs of inmates." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (citation omitted). Examples of "objectively serious" dental needs involve circumstances in which the failure to treat a dental condition causes an inmate to suffer an array of problems, such as headaches, extreme pain, bleeding, infected gums, and problems eating. *Id.* at 593 (citations omitted). The allegations in the complaint suggest that Plaintiff's dental condition was objectively serious.

With regard to the subjective component of the analysis, the complaint must "demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). This state of mind is deliberate indifference. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834). At this early stage, deliberate indifference claims have been stated against

Defendants Chapman, Shah, Doe #1, Doe #2, Hess, and Pierce. Accordingly, Plaintiff shall be allowed to proceed with Count 1 against these defendants.

However, Count 1 shall be dismissed against Defendant Gaetz. He cannot be held liable for the alleged violation of Plaintiff's constitutional rights merely because he is the chief administrator of the prison. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). The complaint does not suggest that Defendant Gaetz had any direct involvement in treatment decisions or, for that matter, any knowledge of Plaintiff's condition and his need for treatment.

Based on the foregoing discussion, Plaintiff shall be allowed to proceed with **Count 1** against Defendants Chapman, Shah, Doe #1, Doe #2, Hess, and Pierce, but not Defendant Gaetz.

**Count 2 – Denial of Access to Grievances**

The complaint articulates no claim for denial of access to grievances (**Count 2**) against Defendants Gaetz or Hess. This claim arises under the Due Process Clause of the Fourteenth Amendment. However, the law is clear on this point. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause *per se*. Therefore, the fact that a counselor, grievance officer, or even a supervisor received a complaint about the actions of another individual does not create liability. Moreover, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the

underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). For these reasons, **Count 2** shall be dismissed with prejudice against Defendants Gaetz and Hess.

### Identification of Unknown Defendants

Plaintiff will be allowed to proceed with his Eighth Amendment claims against Defendants Doe #1 and Doe #2, who are both employed at Pontiac. While it is within the Court's discretion to allow Plaintiff to proceed against unknown defendants, the use of fictitious names is generally frowned upon. *See K.F.P. v. Dane Cnty.*, 110 F.3d 516, 519 (7th Cir. 1997). The parties cannot be served with process or respond to the complaint until they are identified. Therefore, Plaintiff will be required to identify these Defendants with specificity, in order to pursue his claim(s) against them.

Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a claim against them, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Plaintiff may use the discovery process to identify Defendants Doe #1 and Doe #2. Defendant Pierce, Pontiac's warden, shall respond to any discovery requests submitted by Plaintiff that are aimed at identifying these unknown parties. Once identified, Plaintiff will be required to file an amended complaint naming each of the "Doe" Defendants in the case caption and throughout the amended complaint.

**Pending Motions**

Plaintiff has filed a motion for recruitment of counsel (Doc. 3), which is hereby **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

Plaintiff has also filed a motion for service of process at government expense (Doc. 4), which is hereby **GRANTED, in part,** with respect to Defendants **CHAPMAN, SHAH, HESS,** and **PIERCE**, and **DENIED, in part**, with respect to Defendant **GAETZ**. In addition, the motion is hereby **GRANTED**, as it relates to the unknown defendants, **DOE #1** and **DOE #2**, and service shall be made on these defendants once they are identified in a properly amended complaint.

**Disposition**

**IT IS HEREBY ORDERED** that **DONALD GAETZ** is dismissed without prejudice from this action.

**IT IS FURTHER ORDERED** that as to **COUNT 1,** the Clerk of Court shall prepare for Defendants **NATHAN CHAPMAN, VIPIN SHAH, D. HESS,** and **GUY PIERCE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if

not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Service shall not be made on the Unknown (Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. The amended complaint must stand on its own; it supersedes and replaces the original complaint. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004) (citing *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)). Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including expedited discovery aimed at identifying the "Doe" Defendants and a decision on Plaintiff's motion for recruitment of counsel (Doc. 3), pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties*

*consent to such a referral.* Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 17, 2014**

Digitally signed by Nancy J Rosenstengel

**NANCY J. ROSENSTENGEL**
**United States District Judge**