IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RODNEY HEARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-905-NJR-DGW |
| ) | |
| NATHAN CHAPMAN, VIPIN SHAH, DAVE ) | |
| HESS, GUY PIERCE, DR. ANDREW ) | |
| TILDEN, DR. J.W. MITCHELL, HENRIETTA ) | |
| MELVIN, and DEB BULLOCK, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Motions for Summary Judgment filed by Defendants Dave Hess and Guy Pierce (Doc. 48) and Henrietta Melvin (Doc. 81). For the reasons set forth below, it is **RECOMMENDED** that Defendant Melvin's Motion for Summary Judgment (Doc. 81) be **GRANTED** and Defendants Pierce and Hess's Motion for Summary Judgment (Doc. 48) be **GRANTED IN PART AND DENIED IN PART**, and that the Court adopt the following findings of fact and conclusions of law.

#### FINDINGS OF FACT

Plaintiff Rodney Heard, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this action pursuant to 42 U.S.C. §1983 alleging his constitutional rights were violated while he was incarcerated at Pontiac Correctional Center ("Pontiac") and Pinckneyville

Correctional Center ("Pinckneyville"). More specifically, Plaintiff alleges that his requests for dental care were ignored for nearly two years as salivary duct stones and a tumor developed in his mouth, causing him to lose most of his lower jaw bone and ten teeth to cancer. After the Court's initial screening of his Complaint, Plaintiff was allowed to proceed on a deliberate indifference claim against various medical personnel at Pontiac and Pinckneyville, as well as Guy Pierce, the warden of Pontiac at all times relevant, and Dave Hess, a counselor at Pinckneyville at all times relevant (*see* Doc. 9).

On May 29, 2015, Defendants Pierce, the Pontiac Warden, and Hess, a Pinckneyville counselor, filed a motion for summary judgment (Doc. 48)[1]. Defendant Hess asserts he is entitled to judgment as a matter of law as his alleged actions did not violate any of Plaintiff's clearly established constitutional rights and, as such, he avers that he is protected by qualified immunity. More specifically, Plaintiff alleges that in August, 2012 he asked Defendant Counselor Hess for a grievance form and, in lieu of providing him a grievance form, Defendant asked why he needed a form and, as Plaintiff's complaints related to dental care, Defendant informed Plaintiff that it took a year to see a dentist at Pinckneyville (Plaintiff's Complaint, Doc. 1, ¶¶ 8-12). Defendant Hess contends that these allegations are insufficient to state a claim of deliberate indifference and a reasonable official in Defendant Hess's position would not have understood that his conduct violated Plaintiff's constitutional rights.

Defendant Pierce asserts he is entitled to judgment as a matter of law because Plaintiff

---

[1] Defendants Pierce and Hess attempted to file their motion for summary judgment on March 6, 2015, but due to an error in filing, said documents were stricken from the Court's docket on March 9, 2015 (Doc. 37). The Court directed Defendants to re-file their motion (*Id.*). Defendants re-filed their motion on May 29, 2015 (Docs. 48 ad 49).

failed to exhaust his administrative remedies as to the claims against him prior to bringing suit. Plaintiff filed his response to Defendants' motion, arguing triable issues of fact exist that preclude the entry of summary judgment.

Following the filing of Defendants Pierce and Hess's motion for summary judgment, Plaintiff was granted leave to file an amended complaint that named additional defendants in this action (*see* Docs. 53, 44, and 57). In particular, Plaintiff's Amended Complaint named Defendant Henrietta Melvin, a nurse at Pinckneyville. Defendant Melvin also filed a motion for summary judgment on September 28, 2015 arguing Plaintiff failed to exhaust his administrative remedies as to any claims against her prior to filing his lawsuit[2]. Plaintiff timely filed his response to Defendant Melvin's motion arguing triable issues of fact exist that preclude the issuance of summary judgment (Doc. 90).

With regard to exhaustion, the evidence before the Court establishes that Plaintiff filed five grievances that received a final determination on the merits by the Administrative Review Board ("ARB"). In the first of these grievances, dated **February 21, 2013**, Plaintiff indicates he recently saw "the Dentist" and was advised that either cancer or an infection was eating away his jaw. Plaintiff indicates he had been at Pinckneyville since 2011 and, despite multiple requests, had not been seen by a dentist. Plaintiff further complains that he spoke to Defendant Counselor Hess about his requests to see a dentist, but was told that it takes a year to see a dentist. Finally, Plaintiff mentions that he came from Pontiac and, while there, was told by an outside oral surgeon

---

[2] Defendant Dr. Andrew Tilden was also named in Defendant Melvin's motion for summary judgment; however, Defendant Tilden sought to withdraw his motion for summary judgment on the issue of exhaustion on October 29, 2015, and the Court granted Defendant Tilden's request on October 30, 2015 (Doc. 95).

that he had a blocked saliva duct, but the Department of Corrections does not allow surgery for blocked ducts because it would improve with time. Plaintiff's counselor, the grievance officer, and the warden responded to this grievance and it was received by the ARB on April 1, 2013 (Doc. 49-3). It is undisputed that the ARB issued a final decision on the merits of this grievance on May 8, 2013 (*Id.* at p. 4).

Plaintiff also filed grievances on **March 16 and March 28, 2013** complaining about his dental care. More specifically, in these grievances, Plaintiff complains about his medical care, and lack thereof, following the surgery Plaintiff underwent on or about February 27 or 28, 2013 to remove four teeth, part of his tumor, and part of his lower jaw. In particular, Plaintiff complains that he was not provided gauze when he was released from the health care unit and was not issued his soft diet and Vicodin as ordered. Plaintiff's counselor, the grievance officer, and the warden responded to these grievances and they were received by the ARB on June 5, 2013 (Doc. 49-4). It is undisputed that the ARB issued a final decision on the merits of this grievance on January 27, 2014 (*Id.* at p. 8).

Plaintiff again complained about his lack of dental care in a grievance dated **April 30, 2013** (Doc. 49-5). Specifically, Plaintiff complained about the two-year dental exam policy instituted at Pinckneyville and the fact that dental does not have its own request box in cell houses. Plaintiff's counselor, the grievance officer, and the warden responded to this grievance and it was received by the ARB on June 26, 2013 (*Id.*). It is undisputed that the ARB issued its final decision on the merits of this grievance on January 24, 2014 (*Id.* at p. 6).

On November 14, 2013, Plaintiff filed a grievance explaining that he submitted his March 28 and April 30, 2013 grievances to the ARB and had not received a response (Doc. 49-4).

Plaintiff asked that his issues be heard in an expeditious manner. This grievance was submitted directly to the ARB and was received on November 27, 2013 (Doc. 49-4, p. 1). There is no documentation indicating that the ARB ever responded to this grievance.

Plaintiff again filed a grievance on **December 1, 2014**, after initiating this lawsuit, seeking implants as he is missing a number of teeth (Doc. 49-6). Plaintiff's counselor, the grievance officer, and the warden responded to this grievance and it was received by the ARB on January 28, 2015 (*Id.*). It is undisputed that the ARB issued its final decision on the merits of this grievance on February 20, 2015 (*Id.* at p. 4).

### *Pavey Hearing*

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on November 2, 2015. At the hearing, the Court heard testimony from Defendants Hess and Pierce, and Plaintiff testified on his own behalf.

Defendant Pierce testified that he was the Warden of Pontiac in 2011 and his duties included overseeing the day-to-day functions of the facility, managing the budget, and ensuring that prison policies and procedures were met. Defendant Pierce articulated that his duties did not include setting medical policies and/or procedures as such policies are determined by the statewide Office of Health Services.

Defendant Hess testified that he was a correctional counselor at Pinckneyville from October 2011 to March 2015 and, during at least part of this time, he was Plaintiff's counselor. At the time relevant to this lawsuit, the assistant warden at Pinckneyville directed correctional counselors to attempt to resolve inmate grievances informally prior to having them file a grievance. With respect to the claim against him, Defendant Hess recalled Plaintiff wanted to file

a grievance against the dentist at Pinckneyville and, during his initial conversation with Plaintiff, he never gave Plaintiff a grievance form because Defendant believed Plaintiff received the information he needed. Defendant Hess testified that he gave Plaintiff grievance forms at a later date and he never tried to prevent Plaintiff from filing any grievances.

## CONCLUSIONS OF LAW

### *Summary Judgment Standard*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859

(7th Cir. 2005) (other citations omitted)).

### *Exhaustion Requirements under the PLRA*

The Prison Litigation Reform Act provides:

No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow

Plaintiff to exhaust or terminate the matter.

### *Exhaustion Requirements under Illinois Law*

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b). The grievance form shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of the complaint. *Id.* § 504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed, where reasonably feasible under the circumstances. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate's administrative remedies are not exhausted until the appeal is ruled on by the Administrative Review Board. *See Id.* The Administrative Review Board shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. *Id.* § 504.850(f).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis,

which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840. If, after receiving a response from the CAO, an offender feels that the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id.* § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

*Discussion*

### 1. Defendant Guy Pierce

Based on the evidence adduced and arguments made at the hearing, it is recommended that the Court find Plaintiff failed to exhaust his administrative remedies as to Defendant Pierce prior to filing this lawsuit.

It is undisputed that Plaintiff fully exhausted a number of grievances concerning his dental

care and treatment while he was incarcerated at Pinckneyville. Importantly, these grievances do not describe or mention Defendant Pierce, who Plaintiff claims instituted a policy of denying surgery for blocked salivary ducts at Pontiac, in contravention of § 504.810(b) of the Illinois Administrative Code. The only grievance that mentions any policy is dated February 21, 2013 wherein Plaintiff complains that the outside oral surgeon he saw while at Pontiac indicated that the Department of Corrections does not allow surgery for Plaintiff's blocked salivary ducts. Although the Court acknowledges Plaintiff's argument that he did not know about Pontiac's policy until 2013, *after* he was transferred to Pinckneyville, such argument does not address the fact that Plaintiff's grievance does not complain about a policy instituted by Defendant Pierce; rather, Plaintiff's grievance only complains tangentially about a "Department of Corrections" policy that was not within the purview of Defendant Pierce as the Warden of Pontiac. Accordingly, Plaintiff did not exhaust his administrative remedies as to Defendant Pierce prior to filing his lawsuit.

2. **Defendant Henrietta Melvin**

Plaintiff's claim against Defendant Melvin relates to her failure to provide gauze and soft diet trays to Plaintiff following his oral surgery in February 2013. The only mention of such issues in the grievances before the Court is Plaintiff's March 16, 2013 grievance wherein he asserts counselor Melvin (not to be confused with Defendant Nurse Henrietta Melvin), came to his cell on March 8, 2013 and discovered Plaintiff had not received gauze and his mouth was still bleeding following his discharge from the health care unit. Also in this grievance, Plaintiff asserts he saw Dr. Chapman after his discharge from the health care unit as he had developed dry sockets and, during this appointment, he discovered that he only received a soft diet tray for one day although Dr. Chapman had indicated he was to receive a soft diet for a longer period of time.

This grievance not only fails to name or sufficiently describe Defendant Melvin, but fails to identify or describe any individual who was responsible for providing Plaintiff with gauze or soft diet trays and failed to do so. Although this grievance lodges similar complaints as those brought against Defendant Melvin (i.e. the failure to provide gauze and a soft food tray), such complaints were not specific and not directed against any particular individual, in contravention of §504.810(b) of the Illinois Administrative Code. While the Court acknowledges that Plaintiff did not know the name of Defendant Melvin until completing some discovery in this matter, such circumstance does not change the Court's analysis as Plaintiff could have attempted to describe Defendant in his grievance. Accordingly, Plaintiff did not exhaust his administrative remedies as to Defendant Melvin prior to filing his lawsuit.

### 3. Defendant Guy Hess

Defendant Hess contends he is protected by the doctrine of qualified immunity and, as such, is entitled to judgment as a matter of law.

Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Thus, in order to evaluate a claim of qualified immunity, the Court must consider two questions: 1. Whether the right was "clearly established;" and, 2. "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier*, 533 U.S. at 201; *See also Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012). With

respect to the first question, the inquiry is specific to the circumstances of the case: "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howard*, __ U.S. __, 132 S.Ct. 2088, 2093 (2012) (citation and quotation marks excluded). Plaintiff has the burden of establishing that a constitutional right is clearly established. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). *Id.*

To prove a claim of deliberate indifference to a serious medical need against correctional officers, Plaintiff must show that he had an objectively serious medical condition and that prison officials acted with a sufficiently culpable state of mind. *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). A serious medical condition can include one that causes substantial pain or one that a reasonable doctor or patient would find worthy of comment or treatment. *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie County,* 394 F.3d 510, 512-513 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). As to Defendant's state of mind, "the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).

Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendant's responses to it were so plainly inappropriate as to permit the inference that the defendant intentionally or recklessly disregarded his needs." *Hayes* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

On November 9, 2015, the Supreme Court issued a decision in *Mullenix v Luna*, __ U.S. __, 136 S.Ct. 305 (2015), reiterating the principle that while, "we do not require a case directly on point, [ ] existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 308. The relevant inquiry, then, is whether in the circumstances presented to Defendant Hess it is clear he violated Plaintiff's right to be free from deliberate indifference to his serious dental needs. Here, Plaintiff's evidence reveals that: in August 2012, he went to Defendant Hess, his correctional counselor, and requested a grievance form. Defendant Hess asked Plaintiff why he needed the form, and Plaintiff told Defendant he had submitted four requests to dental because he had a painful, swollen salivary duct stone. In response, Defendant Hess indicated it took a year to see a dentist and did not provide him with a grievance form (Doc. 47, p. 8).

The condition that Plaintiff complained of, a painful, swollen salivary duct stone, certainly qualifies as a serious medical condition that a reasonable doctor or patient would find worthy of comment or treatment. *See Hayes* 546 F.3d at 522-23. Defendant Hess did nothing to address Plaintiff's serious complaints. Non-medical jail personnel are entitled to defer to medical

professionals in the treatment of Plaintiff's condition; however, they are not entitled to simply ignore Plaintiff's medical needs. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). Plaintiff had a clearly established right to an appropriate reaction to his serious medical condition, which, the Court recognizes, was left untreated for some time. It should have been clear to a reasonable officer that, by ignoring Plaintiff, his actions were unlawful. *See Hayes*, 546 F.3d at 527; *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) ("Prison official must provide inmates with medical care that is adequate in light of the severity of the condition and professional norms."). Accordingly, it is recommended that the Court find Defendant Hess is not entitled to qualified immunity.

### RECOMMENDATIONS

Based on the foregoing, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Guy Pierce and Dave Hess (Doc. 48) be **GRANTED IN PART AND DENIED IN PART**; that the Motion for Summary Judgment filed by Defendant Henrietta Melvin (Doc. 81) be **GRANTED**; that Defendants Pierce and Melvin be **DISMISSED WITHOUT PREJUDICE**; and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

DATED: December 10, 2015

**DONALD G. WILKERSON**
**United States Magistrate Judge**